IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MAXINE PATRICIA BROWN PIPPEN, and MICHAEL J. PIPPEN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) 1:19CV891 |
| ANTIONETTE NICOLE BROWN SLAUGHTER; KATRINA LAVERNE BROWN HARRISON; EVELYN DELAINE BROWN JONES; MARCIA LATANZA BROWN; D. TYLER NABORS; JAMES R. HARRELL; CRUMLEY ROBERTS, LLP; ROBERT D. DOUGLASS, III; THE TRUSTEES OF GUILFORD TECHNICAL COMMUNITY COLLEGE; BRENNA M. RAGGHIANTI; JOHN CRAIG, III; LISA JOHNSON-TONKINS; and HAGAN GARRETT, PLLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

This suit relates to a partition action initiated more than three years ago in Guilford County Superior Court. Having lost in state court, Plaintiffs now ask this Court, in essence, to review and reject the state court's orders. (*See, e.g.*, ECF No. 18 at 39.) Under the *Rooker-Feldman* doctrine, however, federal district courts may not exercise de facto appellate jurisdiction over state court judgments. Accordingly, this Court is without subject-matter jurisdiction, and this action must be dismissed.

Further, as detailed below, Plaintiffs have an extensive history of making repetitive and frivolous filings, of which the instant suit is but the latest example. Earlier warnings and sanctions have not deterred them from continuing with a vexatious litigation strategy. Thus, in addition to dismissing this case with prejudice, the Court will order Plaintiffs to pay Defendants' attorneys' fees and costs. The Court will also impose a prefiling injunction (gatekeeping order) against Plaintiffs—who, save for a brief stint in 2017, have appeared *pro se* in this case and the underlying state-court proceedings—requiring that any subsequent filings in this or a related matter be certified by an attorney as being in compliance with Federal Rule of Civil Procedure 11.

## I. BACKGROUND

Rosa Mae and Raymond E. Brown owned a single-family house on a small plot of land in Greensboro. (*Id.* at 8.) When they died, the property passed to their five daughters as tenants in common. (*See id.*; ECF 4-1 at 2.) Four of the children—Defendants Slaughter, Harrison, Jones, and Brown (collectively, the "Petitioners")—wanted to sell the property. The other—Plaintiff Maxine Pippen ("Mrs. Pippen")—did not.

In April 2016, the Petitioners filed a petition in Guilford County Superior Court to sell the property and divide the proceeds among the five heirs.[1] (*See* ECF No. 4-1 at 2.) Mrs. Pippen opposed the sale, contending that the property should instead be partitioned in kind. (ECF No. 18 at 10.) After hearing the parties, the Clerk of Superior Court ordered on August

---

[1] Much of this procedural history is recounted in the Superior Court's January 3, 2018 and May 8, 2019 orders, (*see* ECF Nos. 4-1; 4-2), of which this Court takes judicial notice. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (per curiam) (stating that a district court "may clearly take judicial notice" of public records, including state court proceedings).

30, 2016 that the property be sold and appointed a commissioner to oversee the sale. (*See* ECF No. 4-1 at 3.)

Dissatisfied with that result, Mrs. Pippen commenced a multi-year effort to prevent the sale. She started by sending an informal letter and memorandum objecting to the initial sale order; those were rejected by the Clerk, who again ordered that the property be sold on March 8, 2017. (*See id.* at 3.) Mrs. Pippen then retained counsel and filed an appeal, arguing that N.C. Gen. Stat. § 46-22 (the statute governing partition sales) was unconstitutional and that she was entitled to have a jury decide whether the property should be partitioned or sold. (*Id.*) The Superior Court denied her appeal on June 16, 2017 and affirmed the Clerk's previous orders. (*Id.*)

Sometime that summer, it became clear that Mrs. Pippen's husband, Plaintiff Michael Pippen ("Mr. Pippen"), possessed a contingent marital interest in the property; his involvement was therefore required to proceed with any sale. Accordingly, on September 15, 2017, the Petitioners moved to amend their petition to include Mr. Pippen as a party. (*Id.* at 3–4.) When the motion to amend was granted on October 9, 2017, the Pippens filed a wave of new appeals—by this Court's count, five within a five-week period. (*Id.* at 4.) Those appeals were heard in January 2018 and, as before, all were denied. (*Id.*) Further, in light of their "persistent filings of motions and appeals asserting essentially the same positions," the Superior Court warned the Pippens "that if their litigation tactics going forward continue[d] in the vein they ha[d] used to date, the authority to limit their access may well be exercised, and sanctions could also be imposed." (ECF No. 4-2 at 4–5.)

3

Once Mr. Pippen had been added as a party, the Clerk presided over a new partition hearing in February 2018 and, thereafter, ordered again that the property be sold. (ECF No. 4-1 at 4.) Perhaps predictably, the Pippens responded by filing three separate appeals of that order within eight days. (*Id.* at 4–5.) Then, on March 20, 2018, the Pippens each filed additional motions for relief that were "nearly identical" to the first appeal filed by Mrs. Pippen—and denied by the Superior Court—more than a year prior. (*Id.* at 5.)

As their own appeals were pending, the Pippens attempted to remove the partition action to this Court. Finding no objectively reasonable basis for removal, however, this Court remanded and ordered the Pippens to pay $2,000 in attorneys' fees. *See Slaughter v. Pippen*, No. 1:18CV237, 2019 WL 1099709, at *3 (M.D.N.C. Mar. 8, 2019). In so doing, this Court cautioned the Pippens about "the consequences of their litigation strategy" and admonished them for their persistent use of meritless filings. *See id.*

On remand, the Pippens continued to generate a "continuous cycle of meritless and frivolous appeals"—for example, by filing five separate appeals or amendments between March 29 and April 24, 2019 alone. (ECF No. 4-1 at 6–7.) Based on this behavior, the Superior Court ordered the Pippens to pay $5,000 to the Petitioners and, as a further sanction, imposed a gatekeeping order requiring that any subsequent filings be certified as nonfrivolous by a licensed attorney. (*See id.* at 9.)

On July 15, 2019, Defendant Guilford Technical Community College ("GTCC") contracted to purchase the property from the court-appointed commissioner at a private sale. (ECF No. 4-3 at 2–3.) The Clerk issued a confirmation order formalizing the sale on September 16, 2019—three and a half years after the Petitioners filed their initial petition. (*Id.*)

4

In yet another attempt to frustrate the sale, however, the Pippens initiated the instant action, naming as defendants the Petitioners and their attorneys, the commissioner who oversaw the sale, the trustees of GTCC, the clerk who confirmed the sale, and the judge who entered the monetary sanctions and gatekeeping order against them. The Pippens are proceeding *pro se*, and the allegations in their first amended complaint are admittedly difficult to follow. (*See* ECF No. 18.) However, it is clear that the "claims" made therein are simply recycled versions of the same arguments made by the Pippens in the state court proceedings:

(1) that the partition action should have been decided by a jury, (*id.* at 12);

(2) that N.C. Gen. Stat. § 46-22 is unconstitutional, (*id.* at 27);

(3) that the partition action should have been transferred to a three-judge panel in Wake County Superior Court, (*id.* at 13–14); and

(4) that the Clerk's sale orders were otherwise defective, either because all necessary parties had not been joined or the Clerk failed to make certain formal findings of fact, (*id.* at 15–17).

Furthermore, it is obvious that the Pippens' goal in filing this federal action is to somehow undo the Superior Court judgments authorizing the property sale and censuring their chosen litigation tactics. In their prayer for relief, they ask this court to enjoin no less than five different Superior Court orders. (*See id.* at 39.)

With the foregoing in mind, seven motions are before the Court for consideration. Defendants move for dismissal, for attorneys' fees, and for a gatekeeping order similar to that already issued in state court. (*See* ECF Nos. 4; 11; 15; 20; 28; 30.) The Pippens, for their part, move to file a second amended complaint. (ECF No. 45.)

5

Case 1:19-cv-00891-LCB-LPA   Document 55   Filed 04/30/20   Page 5 of 12

## II. DISCUSSION

Defendants provide this Court substantial authority to dismiss Plaintiffs' action. First and foremost, under the *Rooker-Feldman* doctrine, the Court lacks subject-matter jurisdiction over this matter. As a general rule, federal district courts are precluded "from exercising what would be, in substance, appellate jurisdiction over final state-court judgments." *See Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020). The *Rooker-Feldman* doctrine effectuates that rule by barring federal courts from entertaining "cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Although the reach of the doctrine is "narrow," *see id.*, the case at hand falls squarely within its scope: the Pippens, having unsuccessfully opposed the sale of the property, seek nothing more than review and rejection of the state court's orders that the property be sold. Thus, this Court is without subject-matter jurisdiction, and the Pippens' action must be dismissed.[2]

Congress has carefully allocated subject-matter jurisdiction among the Supreme Court and the lower federal courts. District courts, for example, have broad original jurisdiction over actions involving federal questions, *see* 28 U.S.C. § 1331, and those in which the parties hail from different states, *see id.* § 1332(a). However, "only the Supreme Court possesses the authority to exercise appellate jurisdiction over state-court judgments." *Hulsey*, 947 F.3d at

---

[2] As it is without subject-matter jurisdiction, the Court need not reach Defendants additional arguments for dismissal. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002). However, those arguments appear to have merit as well. For example, because Plaintiffs had a full and fair opportunity to litigate—and did in fact litigate—the very same issues and legal arguments raised in their amended complaint to final judgment in state court, (*see, e.g.*, ECF No. 18 at 14, 18–19, 26, 32), this action is almost assuredly barred by principles of issue or claim preclusion under North Carolina law, *see generally Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 880 (N.C. 2004).

249; 28 U.S.C § 1257(a). While Congress could empower district courts to "oversee" certain state-court proceedings—as it has, for instance, with federal habeas review, *see* 28 U.S.C. § 2254(a)—it has thus far chosen not to confer a general power to modify or reverse state-court judgments. *See Thana v. Bd. of License Comm'rs*, 827 F.3d 314, 319 (4th Cir. 2016) (citing *Exxon*, 554 U.S. at 292 n.8). For the time being, that power is "lodged . . . exclusively in [the Supreme Court]." *See Exxon*, 554 U.S. at 283.

The *Rooker-Feldman* doctrine is named for the only two Supreme Court cases "appl[ying] these principles to foreclose district court jurisdiction over suits that were, in essence, appeals from state-court judgments: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)." *Hulsey*, 947 F.3d at 249–50. In *Rooker*, the plaintiffs, having lost in state court, asked a federal district court to declare that the state-court judgment was unconstitutional and, therefore, "null and void." *See* 263 U.S. at 414–15. Likewise, in *Feldman*, parties who were unsuccessful in the District of Columbia Court of Appeals brought a federal action against that very court, alleging that the court's judgment violated federal law and seeking to enjoin it. *See* 460 U.S. at 468–69. In both cases, the complaints "essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments"—in other words, to exercise appellate jurisdiction that had not been allocated to them by Congress. *See Exxon*, 554 U.S. at 283. The Supreme Court held that such suits were "out of bounds, *i.e.*, properly dismissed for want of subject-matter jurisdiction." *See id.* at 284.

In recent years, the Supreme Court has clarified that the applicability of *Rooker-Feldman* is limited to scenarios in which a plaintiff, having lost in state court before filing their federal

7

action, seeks to collaterally attack that unfavorable judgment. *See, e.g.*, *Skinner v. Switzer*, 562 U.S. 521, 531 (2011) (citing *Exxon*, 554 U.S. at 284). Accordingly, "[i]f a federal plaintiff presents some *independent claim*, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party," then *Rooker-Feldman* presents no jurisdictional bar (though state preclusion rules may still be decisive). *See Exxon*, 554 U.S. at 283 (emphasis added) (quotations omitted); *Vicks v. Ocwen Loan Servicing, LLC*, 676 F. App'x 167, 168 (4th Cir. 2017) (per curiam) ("Under [*Rooker-Feldman*], federal courts may entertain claims previously examined by a state court, so long as those claims do not seek review of the state court decision itself.").

There does not appear to be any such "independent claim" here.[3] Rather, the Pippens are "seek[ing] to overturn [the] state-court judgment[s] by reiterating the same arguments [they] pursued in the state court." *Hulsey*, 947 F.3d at 252 (citing *Feldman*, 460 U.S. at 482 n.16). "That [they] cannot do." *See Chien v. Grogan*, 710 F. App'x 600 (4th Cir. 2018) (per curiam).

---

[3] The closest thing to an "independent claim" comes at the end of the Pippens' prayer for relief, in which they ask this Court to "Enjoin Clerk of Superior Court enforcement of N.C. Gen. Stat[. §] 46-22 or any subsequent Partition Statute until such time it[s] procedures provide trial by Jury." (ECF No. 18 at 39.) This could be understood as a "general attack on the constitutionality" of North Carolina's partition rules, which would not be barred by *Rooker-Feldman*. *See Feldman*, 460 U.S. at 487. Elsewhere in the amended complaint, however, the Pippens appear to limit this claim to the Superior Court's specific application of § 46-22 in their particular case. (*See, e.g.*, ECF No. 18 at 9.) Regardless, to the extent the Pippens mean to challenge the general validity of § 46-22 under the North Carolina and/or federal constitutions, that claim fails as a matter of law. *See Brown v. Boger*, 139 S.E.2d 577, 582 (N.C. 1965) ("Whether land should be divided in kind or sold for partition is a . . . decision of the clerk of superior court, subject to review by the judge on appeal; it is not an issue . . . for a jury."); *Walker v. Sauvinet*, 92 U.S. 90, 92 (1875) (holding that the Seventh Amendment's civil jury guarantees do not apply to state-court proceedings).

8

Nor can the Pippens save their suit by further amending their complaint. The proposed second amended complaint is substantively similar to the first amended complaint and does nothing to remedy its jurisdictional defects. (*See* ECF 45-1 (adding length by recounting additional state-court procedural history, but maintaining the same arguments and relief sought).) Thus, like its precursors, the proposed second amended complaint would be barred by *Rooker-Feldman* and would be unlikely to survive a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

In sum, this Court concludes that it lacks subject-matter jurisdiction over this action under the *Rooker-Feldman* doctrine. The proposed second amended complaint would be subject to dismissal for the same reason. Accordingly, Defendants' motions to dismiss will be granted, and the Pippens' motion to file a second amended complaint will be denied.

### III. SANCTIONS

Defendants contend that the Pippens should be sanctioned for filing this action with "the improper purpose of harassing the [D]efendants and causing them to incur needless expense." (*See, e.g.* ECF No. 5 at 10.) As detailed above, virtually every motion and appeal that the Pippens have made over the last three-plus years has been denied. They have been explicitly warned about frivolous and repetitive filings three times. They have been monetarily sanctioned twice—including once by this Court—and have been enjoined from filing anything further in state court without first seeking the approval of a licensed attorney. After all that, they once again came to federal court—in practical, if not technical defiance of the state-court gatekeeping order—and filed this *pro se* action, only to regurgitate arguments that had been

previously rejected. In light of this behavior, the Court finds that further sanctions are warranted.[4]

Pursuant to Rule 11, the Court may impose sanctions in order to deter abusive litigation tactics. *See* Fed. R. Civ. P. 11(b)–(c) ("[T]he court may impose an appropriate sanction" on a party whose filings are intended to "harass, cause unnecessary delay, or needlessly increase the cost of litigation."). The Court also has the inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). Further, the All Writs Act, 28 U.S.C. § 1651(a), authorizes judges to restrict access to federal courts by "vexatious and repetitive litigants" by imposing prefiling injunctions upon them, although the "use of such measures against a *pro se* plaintiff should be approached with particular caution and should remain very much the exception to the general rule of free access to the courts." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817–18 (4th Cir. 2004) (quotations omitted).

Defendants have formally moved for both monetary sanctions, in the form of attorneys' fees and costs, as well as a prefiling injunction resembling the gatekeeping order already imposed on the Pippens in state court. (*See, e.g.*, ECF Nos. 4 at 3; 20 at 3.) The Court agrees that both sanctions are appropriate here. Rather than defend their behavior, the Pippens appear to argue, without any real justification, that certain *Defendants* should be

---

[4] This Court may order sanctions even though it has determined that subject-matter jurisdiction over the instant complaint is lacking. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("[T]he imposition of costs, attorney's fees, [or] a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992) (confirming that a sanctions order "does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction").

sanctioned for "meritless and frivolous" filings, rather than themselves; exactly the kind of problematic, unsupported assertions they have made all along. (*See e.g.*, ECF Nos. 9 at 4; 33 at 7; 35 at 6; 39 at 2.)

As to attorneys' fees and costs: Defendants have requested an opportunity to provide the Court with information regarding the resources they have expended in defending this action. (*See, e.g.*, ECF No. 5 at 10 n.2.) The Court will allow Defendants fourteen (14) days to file such information and, after considering it, separately order the Pippens to pay Defendants a specified amount.

As to the prefiling injunction: in determining whether a prefiling injunction is warranted, a district court must consider all relevant circumstances, including:

> (1) the party's history of litigation, in particularly whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Cromer*, 390 F.3d at 818. The Court has considered each of the above enumerated factors and finds that a prefiling injunction is both a suitable and necessary sanction—the Pippens have an extensive history of making vexatious and duplicative filings in both state and federal court; the instant suit is a continuation of that behavior, which has resulted in significant cost and delay to Defendants and unnecessarily burdened this Court's docket; and alternative sanctions have, thus far, proven inadequate. The Court will therefore enjoin the Pippens from making any future filings in federal court related to this action, the real property at issue, or any corresponding litigation arising out of substantially similar subject matter unless certified by an authorized attorney as being in compliance with Rule 11.

11

Finally, because the Pippens have demonstrated a continued propensity to pursue an improper litigation strategy, this Court issues the following express warning: failure to comply with this Court's orders <u>will result in additional sanctions</u>.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motions to Dismiss and for Sanctions, (ECF Nos. 4; 11; 15; 20; 28; 30), are GRANTED. This action is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiffs' Motion to File Second Amended Complaint, (ECF No. 45), is DENIED.

IT IS FURTHER ORDERED that Plaintiffs are directed to pay Defendants' attorneys' costs and fees associated with this action, in an amount to be specified by the Court in a subsequent Order. Defendants shall submit to the Court information regarding their legal expenditures within fourteen (14) days.

IT IS FURTHER ORDERED that a Prefiling Injunction (Gatekeeping Order) is imposed against Plaintiffs Maxine Patricia Brown Pippen and Michael J. Pippen as follows:

(1) Any future filings in federal court related to this action, the real property at issue, or any corresponding litigation arising out of substantially similar subject matter must be certified by an authorized attorney who either: (a) has agreed to undertake representation of Mr. and/or Mrs. Pippen; or (b) has agreed that the proposed motion, pleading, or other filing has merit and is in compliance with Federal Rule of Civil Procedure 11.

(2) This order and injunction do not apply to the filing of timely notices of appeal from this Court to the Fourth Circuit Court of Appeals and filings solely in furtherance of such appeals for this case.

This, the 30th day of April 2020.

/s/Loretta C. Biggs
United States District Judge